UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STANLEY QUINTON WENTZ,<br><br>　　　　　Defendant. | Case No. 1:16-CV-3153-LRS<br><br>**ORDER FOR ENTRY OF JUDGMENT AND DECREE OF FORECLOSURE** |

BEFORE THE COURT is Plaintiff's Motion for Default Judgment (ECF No. 10) as to Defendant Stanley Quinton Wentz.  Plaintiff, the United States of America, brings this action on behalf of the Farm Service Agency (hereinafter "FSA").The Defendant has not appeared, responded to the Clerk's Order of Default or the pending Motion, or otherwise participated in the pending action.  This court has jurisdiction pursuant to 28 U.S.C. § 1345 because the United States is a party to the suit.

I.    **BACKGROUND**

A.    **Procedural History**

Plaintiff filed the instant foreclosure action on August 24, 2016, seeking to collect on an indebtedness owed to the Farm Service Agency ("FSA") and to foreclose on security held by FSA, including certain real property and farm

ORDER - 1

equipment. At the time of the filing of the Complaint the amount of indebtedness was $246,534.72 in principal plus interest, which as of June 24, 2015 was $24,533.14. (ECF No. 1). On December 16, 2016, Plaintiff moved for entry of a Clerk's order of default, which the court entered on December 19, 2016. (ECF No. 9).

**B.   Factual History**

The FSA is an agricultural lender for farmers who cannot obtain credit from private lenders. (ECF No. 10 at 2). The Complaint lists and attaches the two promissory notes in the amounts of $120, 158 and $139, 342.18 executed by Stanley Wentz, which were both re-amortized by promissory notes dated February 16, 2011. (ECF No. 1, Exs. A-B). Securing the notes are mortgages (ECF No. 1, Ex. D) identifying certain real property (and including certain irrigation equipment thereon) in Yakima County and security agreement identifying additional interests. (ECF No. 1, Ex. A-F). The security interests encumber crops; other payments arising from or proceeds derived from the crops; farm machinery, equipment, and inventory; and livestock, supplies, and other farm products. (ECF No. 1, Ex. E). The mortgages and security agreements were recorded with the State of Washington. (ECF No. 1, Ex. F). The Defendant is delinquent on the two promissory notes due to the failure to make payments. (ECF No. 1 at 5; ECF No. 10 at 2; ECF No. 11, Ex. A). In

addition, Defendant has failed to pay real estate taxes due and therefore is in default under the terms of the real estate mortgages (ECF No. 1 at Ex. C-D).

In April 2012, FSA sent a "Notice of the Availability of Loan Servicing and Debt Settlement Programs for Delinquent Farm Borrowers to Borrowers who are 90 Days Past Due," notifying the Defendant of the availability of loan servicing and the possibility of acceleration and foreclosure.  (ECF No. 1, Ex. G)  Defendant returned a form, responding to the Notice on April 12, 2012.  (ECF No. 1, Ex. G)  In August 2012, the FSA denied Defendant's application for loan serving.  (ECF No. 1, Ex. G).  In September 2013, FSA accelerated the debt, notifying the Defendant $245,648.72 in principal, $15,954.73 of unpaid interest, plus additional interest accruing, was due within 30 days or the United States would foreclose on the security interests securing the debt.  (ECF No. 1, Ex. J).

## II.    LEGAL STANDARD

Fed.R.Civ.P 55(b)(2) permits a court, following an entry of default, to enter default judgment against a defendant. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). In exercising that discretion, this court must consider the following seven factors articulated by the Ninth Circuit in *Eitel v. McCool* ("Eitel factors"): "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake

ORDER - 3

in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  In evaluating the *Eitel* factors, well-pled allegations in the Complaint are taken as true, except those regarding damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The court may, in its discretion, consider evidence submitted with a motion for default judgment to determine damages. *Id*.

## III.   DISCUSSION AND ORDER

The court is satisfied that service of process was adequate with respect to the Defendant, that this court has subject matter jurisdiction, and that Plaintiff has complied with Local Rule 55.1.  Turning to the *Eitel* factors, the court has evaluated each of the *Eitel* factors listed above and finds that the facts of this case weigh heavily in favor of granting default judgment.  First, Plaintiff would suffer prejudice if the court does not enter default judgment because Defendant has failed to participate in this litigation and Plaintiff has no other means of recovery.  Second, Plaintiff's Complaint alleges the necessary elements for an action to foreclose on multiple mortgages, which satisfies the second and third factors.  *See U.S. v. Johnson*, 2007 WL 655511 (E.D.Wash. 2007)(unpublished)(citing Washington law) ("In an action for foreclosure involving multiple mortgages, it is sufficient to make a prima facie case in the favor of mortgages that appear to be senior on the record

by: (1) showing that the mortgages were given for money loaned, (2) introducing the notes and mortgages, (3) proving recording of the mortgages, and (4) proving nonpayment."). The fourth factor is also met since there is a significant amount of money at stake in this action which is owed to the United States.  The fifth, sixth, and seventh factors are also satisfied, as despite opportunity to participate, Defendant has refused to defend the action in compliance with the Federal Rules of Civil Procedure.

With respect to the amount of damages, the court finds the allegations in and attachments to the Complaint, as well as the Declaration in Support the Motion for Default Judgment (ECF No. 11) adequately support the amount of indebtedness and no further hearing is required.

**ACCORDINGLY**, the court being fully advised, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Default Judgment (**ECF No. 10**) is **GRANTED.** The following Order of Foreclosure in conformity with the United States' request is hereby entered:

Plaintiff is awarded judgment against Defendant Stanley Quinton Wentz in the amount of $281,454.35 ($246,534.72 principal and 34,919.63 interest accrued through December 22, 2015)( *see* ECF No. 10 at 3); and interest accruing hereafter at the daily rate of $19.0229, to the date of this Judgment; plus interest from the date of this Judgment at the prevailing legal rate until paid in full, for costs of suit,

including the filing fee allowed pursuant to 28 U.S.C. § 2412(a)(2), and in the future incurred.

2.   The debt upon which this judgment is based is secured and perfected by the following:

    a.   A mortgage recorded June 17, 2009, under Auditor's File No. 7656940, Official Records of Yakima County, Washington.

    b.   A mortgage was recorded February 23, 2011, under Auditor's File No. 7720375, Official Records of Yakima County, Washington.

    c.   Security agreements dated March 13, 2009, and February 16, 2011, describing crops, livestock, supplies, other farm products, and farm and other equipment which were perfected by the filing of a financing statement on March 13, 2009, as Instrument No. 2009-072-1555-6, and the filing of a continuation statement on September 13, 2013, as Instrument No 2013-256-8777-2, Official Records of Washington State Department of Licensing

3.   The foregoing mortgages and security agreements cover the following described property situated in Yakima County, State of Washington:

    a.   REAL PROPERTY. See **Exhibit A** attached hereto, containing the following legal description:


The Southwest ¼ of the Southwest ¼ Section 24, Township 10 North, Range 17, E.W.M; EXCEPT the right of way for County Road along the south line thereof.
Situated in Yakima County, State of Washington

Assessor's Parcel Number: 171024-33001

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

ORDER - 6

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions. The irrigation system includes, but is not limited to, the following items:

> 1500 feet of buried 4 inch PVC pipe
> 280 feet of portable mainline 5 inch Aluminum pipe
> 1080 feet of 4 inch Aluminum pipe wheel line

    b. CHATTELS. See **Exhibit B** attached hereto and incorporated by reference.

4.  The real estate mortgages and security agreements, which constitute first and prior liens upon the personal property and real property (including irrigation equipment appurtenant thereto) described above, are hereby foreclosed. Defendant Stanley Wentz and all persons claiming by, through or under him are forever barred and foreclosed from asserting any right, title, or interest in and to said property, except for the statutory rights of redemption provided by law.

5.  After the 10-day automatic stay of proceedings to enforce a judgment, Plaintiff may present praecipes for orders of sale with respect to the real property and chattels and present the same to the clerk. *See* Fed. R. Civ. P. 62(a) & (f) (noting 14-day stay unless otherwise under state law for a judgment on a lien); Wash. CR 62(a) (10-day stay); *see also* 18 Wash. Prac., Real Estate § 19.12 (2d ed.) (describing the enforcement process).

6.  The terms of the Order of Sale **for real property** shall be as follows:

    a. The United States Marshal for the Eastern District of Washington or his representative will be authorized and directed under 28 U.S.C. §§ 2001 and 2002 to offer for public sale and to sell the real property referenced in Paragraph 3.a above and more particularly described in **Exhibit A** ("Property").

ORDER - 7

b. The Marshal or his representative is authorized to have free access to the Property and to take all actions necessary to preserve the Property, including, but not limited to, retaining a locksmith or other person to change or install locks or other security devices on any part of the property, until the deed to the Property is delivered to the ultimate purchaser.

c. The sale of the Property shall be free and clear of any right, title, or interest in and to said property by Defendant Stanley Wentz, except to the extent that such Defendant has rights of redemption under Wash.Rev.Code § 6.23 or excess funds under Wash. Rev. Code §6.21. The redemption period shall be 12 months.

d. The sale shall be subject to building lines, if established, all laws, ordinances, and governmental regulations (including building and zoning ordinances) affecting the Property, and easements and restrictions of record, if any.

e. The sale shall be held at the courthouse of the county in which the Property is located, on the Property's premises, or at any other place in accordance with the provisions of 28 U.S.C. §§ 2001 and 2002, and shall be announced in the Notice of Sale.

f. The date and time for sale are to be announced by the United States Marshal, his/her representative in the Notice of Sale.

g. The Notice of Sale shall be published once a week for at least four consecutive weeks before the sale in at least one newspaper regularly issued and of general circulation in Yakima County, and, at the discretion of the Marshal or his/her representative, by any other notice deemed appropriate. The notice shall contain a description of the Property; the time, date, and location of the sale as determined by the

ORDER - 8

United States Marshal or his representative; the minimum bid as determined by the United States; and shall contain the terms and conditions of sale listed in subparagraphs i – o below.

h. The minimum bid will be set by the United States for the Property. If the minimum bid is not met or exceeded, the Marshal or his or her representative, may without further permission of this Court, and under the terms and conditions in this order of sale, hold a new public sale, if necessary, and reduce the minimum bid or sell to the highest bidder;

i. The successful bidder for the Property shall be required to deposit at the time of the same with the Marshal, or his/her representative, a minimum of ten percent of the bid, with the deposit to be made by certified or cashier's check or cash payable to the United States District Court for the Eastern District of Washington. Before being permitted to bid at the sale, bidders shall display to the Marshal, or his/her representative, proof that they are able to comply with this requirement. No bids will be received from any person(s) who have not presented proof that, if they are the successful bidders(s), they can make the deposit required by this order of sale;

j. The balance of the purchase price for the Property is to be paid to the United States Marshal within twenty days after the date the bid is accepted, by a certified or cashier's check payable to the United States District Court for the Eastern District of Washington. If the bidder fails to fulfill this requirement, the deposit shall be forfeited and shall be applied to cover the expenses of the sale, including commissions due under 28 U.S.C. § 1921(c), with any amount remaining to be applied to the Judgment of Defendant Wentz at issue herein. The Property shall

ORDER - 9

be again offered for sale under the terms and conditions of this order of sale, or, in the alternative, sold to the second highest bidder;

k. The sale of the Property shall be subject to confirmation by this court. The Marshal shall file a report of sale with the court, together with a proposed order of confirmation of sale and proposed deed, within thirty days from the date of receipt of the balance of the purchase price;

l. On confirmation of the sale, the Marshal shall execute and deliver a deed of judicial sale conveying the Property to the purchaser;

m. On confirmation of the sale, all interests in, liens against, or claims to, the Property that are held or asserted by all parties to this action are discharged and extinguished;

n. On confirmation of the sale, the recorder of deeds, Yakima County, Washington, shall cause transfer of the Property to be reflected upon that county's register of title; and

o. Any party to this suit may become a purchaser at such sale. The United States may bid as a credit against its judgment without tender of cash.

7. The terms of the Order of Sale **for Chattels,** more particularly described in **Exhibit B** ("Chattels"), shall be as follows:

a. The United States Marshal for the Eastern District of Washington or his representative will be authorized and directed to offer for public sale and to sell the Chattels referenced in Paragraph 3.b above and more particularly described in **Exhibit B** ("Chattels") without appraisement at public auction.

b. The sale of the Chattels shall be free and clear of any right, title, or interest in and to said property by Defendant Wentz.

c. The United States Marshal may employ a professional auctioneer to assist in the sale of the Chattels and livestock to the highest bidder.

ORDER - 10

d.  The United States Marshal is authorized to reimburse any such professional auctioneer's fees for such services from the sale proceeds for any necessary expenses including commissions at the prevailing market rate.

e.  The United States Marshal should accompany the auctioneer to the property to maintain the peace during inventory and preparation for transportation. The Marshal and auctioneer should be authorized to junk any equipment suitable only for scrap, and whose anticipated sale price is negligible and will not exceed its pro rata costs of sale.

f.  A Notice of Sale shall be published once a week for at least two consecutive weeks before the sale in at least one newspaper regularly issued and of general circulation in Yakima County, and, at the discretion of the Marshal or his/her representative, by any other notice deemed appropriate. The notice shall contain a description of the Chattels; the time, date, and location of the sale as determined by the United States Marshal or his representative; and shall contain the terms and conditions of sale listed in subparagraphs g – i below.

g.  The successful bidder will be required to pay the full amount of the bid for the Chattels by the Close of Business the day of the sale. All monies much be paid to the Clerk of the Court, or if a professional auctioneer is retained, then to the professional auctioneer who shall conduct an accounting following the sale and forward the sale proceeds to the United States Marshal for deposit with the Clerk of the Court by either cash, or certified funds, i.e. cashier's check. If the successful bidder fails to timely pay the full amount of the bid, then the U.S. Marshal's service or its representative may accept the next highest bid, pursuant to the same terms of sale.

ORDER - 11

h.  The sale will be "as is" and without warranty of any kind.

i.  The U.S. Marshal's Service reserves the discretion to waive any of these requirements.

8.  Under Wash.Rev. Code § 61.12.070, the court directs in this decree of foreclosure "that the balance due on the mortgage and costs which may remain unsatisfied after the sale of the mortgaged premises, shall be satisfied from any property of the mortgage debtor . . .." Accordingly, if any deficiency remains after application of the proceeds of the sale pursuant to the Judgment, execution shall be issued for said deficiency against Defendant Wentz and enforced against any other property of Defendant Wentz not exempt from execution.

9.  Until the Property and Chattels are sold, Defendant Wentz shall take all reasonable steps necessary to preserve the Property (including all buildings, improvements, fixtures and appurtenances on the property) and Chattels in their current condition including, without limitation, maintaining a fire and casualty insurance policy. Defendant shall neither commit waste against the Property nor cause or permit anyone else to do so. Defendant Wentz shall neither do anything that tends to reduce the value or marketability of the Property or Chattels nor cause or permit anyone else to do so. Defendant Wentz shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or indirectly tend to adversely affect the value of the Property or that may tend to deter or discourage potential bidders from participating in the public auction, nor shall they cause or permit anyone else to do so.

10. All persons occupying the Property shall leave and vacate the Property permanently within **thirty (30) days** of the date of this Order, each taking with them his or her personal property – except the Chattels – and also leaving all

ORDER - 12

improvements, buildings, fixtures, and appurtenances to the Property. If any person fails or refuses to leave and vacate the Property by the time specified in this Order, the United States Marshal's Office is authorized to take whatever action it deems appropriate to remove such person from the premises. Specifically, the United States Marshal (or his/her designee) is authorized and directed to take all actions necessary to enter the Property at any time of the day or night and evict and eject all unauthorized persons located there, including Defendants, or any other occupants. To accomplish this and to otherwise enforce this Order, the United States Marshal (or his/her designee) shall be authorized to enter the Property and any and all structures and vehicles located thereon, and to use force as necessary. When the United States Marshal concludes that all unauthorized persons have vacated, or been evicted from the Property, he/she shall relinquish possession and custody of the Property to the United States, or more specifically the Farm Services Agency (or its designee). No person shall be permitted to return to the Property and/or remain thereon without the express written authorization by the United States Marshal and/or the Farm Service Agency, and/or the United States Department of Justice, or their respective representatives and/or designees. Unauthorized persons who re-enter the Property during the time this Order is in effect may be ejected by the United States Marshal without further order of the Court.

11. If any person fails or refuses to remove his or her personal property from the Property by the time specified herein, the personal property remaining on the Property thereafter is deemed forfeited and abandoned, and the United States Marshal's Office is authorized to remove it and to dispose of it in any manner it deems appropriate, including sale, in which case the proceeds of the sale are

ORDER - 13

to be applied first to the expenses of sale and the balance to be paid into the Court for further distribution.

12. The proceeds arising from sales are to be paid to the Clerk of this Court and applied as far as they shall be sufficient to the following items, in the order specified:

   a. To the United States Marshal for the costs of the sale (including the costs of any professional auctioneer if retained);

   b. To all taxes unpaid and matured that are owed to Yakima County for real property taxes on the property;

   c. To the United States to be applied to the Judgement of Defendant Wentz at issue here plus all interests and costs due and owing thereon.

   d. Any balance remaining after the above payments shall be held by the Clerk until further order of the Court.

The District Court Executive is directed to file this Order, enter Judgment in favor of Plaintiff accordingly, and provide copies to counsel and mail a copy to the Defendant at the address provided.

DATED this 3rd day of March, 2017.

*s/Lonny R. Suko*

_____

LONNY R. SUKO
SENIOR U.S. DISTRICT COURT JUDGE

ORDER - 14

# EXHIBIT A

**EXHIBIT A**

BORROWER:  STANLEY QUINTON WENTZ

LEGAL DESCRIPTION:

The Southwest ¼ of the Southwest ¼ of Section 24, Township 10 North, Range 17, E.W.M.;
EXCEPT the right of way for County Road along the South line thereof.

Situated in Yakima County, State of Washington

ASSESSOR'S PARCEL NUMBER:  171024-33001

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions.  The irrigation system includes, but is not limited to, the following items:

> 1500 feet of buried 4 inch PVC pipe
> 280 feet of portable mainline 5 inch Aluminum pipe
> 1080 feet of 4 inch Aluminum pipe wheel line

Initial _SW_    Date _2-16-11_

# EXHIBIT B

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
     planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
     within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
     Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted,
     to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Stanley Wents | 40 | YAKIMA, WA | 3 miles West of White Swan |
| BIA | 145 | YAKIMA, WA | Stanley Wentz |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds
derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial *SW*_____ Date *2-16-11*

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* _____Washington_____ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | JD | 6200 | Good | | L0620MI60755 |
| 2 | 1 | Loader | JD | 640 | Good | | W00640C013007 |
| 3 | 1 | Backhoe | Kelley | B70,3Pt | Good | | None |
| 4 | 1 | Swather | JD | 38360 | Good | 1995 | E03830X701541 |
| 5 | 1 | Header | JD | 300 | Good | | E00300X723051 |
| 6 | 1 | Rake, Hay | Sitrex | GS 220 | Good | | 152353 |
| 7 | 1 | Baler | NH | 420 | Fair | | 578730 |
| 8 | 1 | Harobed (Bale Wagon) | NH | 1032 | Food | | 4022 |
| 9 | 1 | Pump & Motor | Berkley/Isuzu | 3 cyl motor | Good | | None |
| 10 | 1 | Wheel Line | Aluminum | 4"x7', 1280' long | Good | | None |
| 11 | 1 | Pump | Unknown | 15hp | Good | | B3ZQ |
| 12 | 1 | Trailer, Stock | Wilson | 24' | Good | | 1W1BEBJCXH536410 |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _8W_    Date _2-16-11_

FSA-2028 (09-03-10)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)* ___Washington___ :

| (2)<br>Line No. | (3)<br>Quantity | (4)<br>Kind or Sex | (5)<br>Breed | (6)<br>Color | (7)<br>Weight | (8)<br>Age | (9)<br>Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Cattle - Beef - Breeding Bulls - Angus | | | | | |
| 2 | 39 | Cattle - Beef - Breeding Cows - Cows | Mixed | Brown/White | | | |

Initial _~€W_   Date _2-/6-/l_

FSA-2028 (09-03-10)                                                                                 Page 5 of 7

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Crops, livestock, supplies, other farm products, and farm and other equipment. All accounts, general intangibles, including but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _S W_____ Date _2-16-11_